So the first case for argument is 23-1302, EPIC Systems v. Decapolis Systems. Don't sit down, Mr. Fuller. We're ready whenever you are. Good morning. Please proceed. Good morning, Your Honors. If it pleases the Court, Scott Fuller on behalf of the Declaratory Judgment Defendant, appellant in this case, Decapolis Systems, LLC. This case comes to you on a familiar note, I'm sure. 12b-6, motion to dismiss. Eligibility arguments from the Southern District of Florida, Judge Middlebrooks. All respect to Judge Middlebrooks, he made a number of errors which this court, in its de novo review, should correct. This case should be reversed. It should be remanded for further proceedings consistent with the order that The errors, we think, are clear and really trace the entire history of this case and all of the issues pertinent to 101. Well, you started off by saying this case has a familiar note, and I would agree with that. And one of the things that seems familiar to me is we've had a number of years of jurisprudence on 101, and while people have complained that the standards and the words like abstract are ambiguous, we've got a lot of data points in our cases. And you can tell me why I'm wrong, but it seems to me that the limitations and the claims here trace very closely to the kinds of things we've been issuing and affirming 12b-6s on, the kind of information sharing and all of that stuff. This seems to be in that bucket. So why is this not in the bucket of all of those cases where we've said information retrieving, receiving, putting together information falls under the abstract idea under Step 1? Well, thank you, Your Honor, and these claims are more than just information sharing. We have to go back again to the time of the invention, which is now almost 25 years ago, and the specification makes clear, and this was pled affirmatively in the pleadings, which is one of the issues on appeal, is that the district court failed to credit the claims, the specific facts that were set forth in the pleading by the capitalists, specifically with regard to the state-of-the-art in this particular healthcare area. At the time, there was a grave deficiency, a life-or-death deficiency, in the way healthcare records were available. They weren't available in a way that the claims allow, and so this is— But we're not here on an obviousness finding. We're here on a 101 challenge. So why aren't you telling me why the district court was wrong in finding the claim language only presented an abstract idea? Well, with regard to the abstract idea, the district court failed to properly conduct the abstract idea analysis in the first place. We must look, as this court has said many times, we must look to the focus of the invention, the focus of the specification, reading the specification in sum, and looking— So what do you think this claim is directed to? These claims are directed to a very specific technical solution to the existence, the problem that existed at the time, namely, a protocol for facilitating the access to medical records by healthcare professionals and the specific, timely, real-time delivery of that information to the patient, which was very unusual at the time. And what's the technical solution? That is the technical solution, correct, because the system— But isn't this claim just simply automating prior pen-and-paper methodologies? I mean, we've said many times that automating some type of method of organizing human activity, yes, maybe things can be faster, yes, maybe things can be more accurate because you erase human error from the equation, but nevertheless, that's still just doing an abstract idea on a computer, on generic components, just transferring data back and forth. And we've said that many, many times. I mean, we've got the University of Florida case versus GE. You're aware of that. We have a non-PREC case called N. Ray Solomon that looks really, really close to this case. It's non-PREC, but nevertheless, I think there's nothing in that opinion that's inaccurate. And so when I look at your claims here, just the fact that there are some advantages to automation of doing manual processes is something time and again we've said alone is not an inventive concept or is not something that makes an otherwise abstract idea a non-abstract idea. So what else do you have for us? Well, with regard to that, Your Honor, the pen and paper analogy fails here because the claims specifically require the real-time transmission from the physician records to the person of the patient. And so that did not— But we've said before this notion of real-time, you know, because thanks to computers and computer networks, we can make things faster, is of no moment. That's just something that's part and parcel that comes with putting something on a computer, putting something on a computer network. So the end result or consequence that some information is getting to a person faster than it could otherwise, if just done merely manually, again, is not good enough. So what else do you have for us? Well, even if we accept the fact that if there is an abstract idea, there's still the step two analysis, which the district court failed to properly conduct. And specifically, as I mentioned, the complaint in this case sets forth facts, which must be accepted as true at the 12B6 stage. These facts come directly from the specification itself. And the specification makes clear that at the time, the state of the art was such that the way in which healthcare records were collected was deficient. The doctors at the time would take questionnaires from patients at the time. These are necessarily incomplete and inconsistent. So the solution that is advanced overcame the deficiencies in the state of the art, as expressed in the specification, in the form of this real-time transfer of the data. Did you just say that the real-time transmission, which is an abstract idea, is also the technological improvement? The technological improvement is the modification of the typical paradigm by which physicians collected information from patients. Now, instead of collecting from a patient's memory on a form, the patient has a complete, accurate, up-to-date, up-to-the-minute record to share. And it takes away the inaccuracies and the inefficiencies of the prior systems. Even if that were all true, I don't see that in the claim, this notion of whatever you just described. The claims are very clear, and I'll speak of Claim 20. The claims are very broad. They're just about collecting information, processing information, transmitting information, updating information, all in the context of patient healthcare records. But what you just described is maybe an embodiment encompassed by the claims, but the claims themselves don't recite what you just said. Claim 20, for example, of the 048, Your Honor, does specifically recite a temporal aspect where it says that the transfer is conducted at the time, during the period of time in which the modification to the healthcare record is being made. So there is a real-time component, to coin a term, to these claims that is the specific advancement over the art and the specific improvement over the state-of-the-art, as was made clear in the specification, the deficiencies. So the real-time transmission of information to a person, that's your technical advance? The technical advance is in the system as a whole. The claim must be read as a whole. The system specifically describes a protocol by which the system has access credentials that are checked in the first instance. The system creates a new message that incorporates not only the access credential information, but also a component of the updated information, and creates a new message that is transmitted to the patient in real-time. So all of those steps combine to comprise the advancement over the art. It's not just a claim that says, hey, send some data. Can I ask you, you started by talking about the age of this patent. Is this patent still, is it expired? It is expired, yes, Your Honor. Are there other patents off this specification circulating out there? There are other patents. There are no, are you asking about pending applications? Well, it should be expired. There are no pending applications. I'm just wondering if there's other patents that may be also expired due to the early filing date that are still, I don't know, in litigation or something like that. None that are non-expired, Your Honor. None that are non-expired. So again, the complaint here sets out facts, which must be taken as true. This is a 12B6 motion. The facts of the matter are that at the time, the conventional state of the art was deficient in many respects. The claims recite a specific advancement, a specific solution to those shortcomings in the art at the time, and those specific advancements are, as I mentioned just a moment ago, in the sequence of events and the specific timing and the combined ability to provide a patient with current, up-to-date health care information, which did not exist at the time and was an advancement. Of course, now everyone does it. But at the time, 25 years ago, is a completely different story. At the time, this was very unusual, very unconventional approach. And if I might briefly, we think these deficiencies in the Step 1, Step 2 analysis and the failure to credit the facts to the non-moving party are dispositive. However, if the court reaches the secondary component of the appeal, which is the abusive discretion issue, we believe that the judge did abuse his discretion in failing to allow the capitalists an opportunity to supplement the record with this evidence that did not exist until the evidence existed, but the declaration didn't exist. And as soon as the declaration came to existence, the capitalists moved very quickly to try to get it in front of the judge, to try to get it into the record. There was no prejudice because the case had been stayed at the time. There was no—it wasn't done for a dilatory motive. There's nothing dilatory about trying to have a complete record and a complete factual basis upon which the court should render its 101. Was this a fact witness? It was an expert report, right? It was an expert report, yes. In a different litigation? It was, but the facts— Why didn't you just go to this expert and develop a declaration soon after the motion to dismiss was filed here back in May? There are a lot of things that could have been done differently, Your Honor, admittedly, but the fact still remains that the declaration— Well, the fact remains there's a scheduling order that has a deadline for amending claims and counterclaims, and, you know, your motion for leave to amend came several months after that deadline passed. It did, and under the rules— So, under abuse of discretion, you're asking us to say that there was— that the district court got it wrong in concluding that you failed to show good cause when you had several months of time passed after the deadline. I really don't know what we can do with you for that. To find an absence of—an absence of—an absence of—an absence of failure of— I'm struggling with my words, of course. You're saying there was good cause. There was no dilatory motive. There was a delay, true. However, there was no prejudice to any party because of the fact that the case had been stayed. Additional facts in the record simply would go into the analysis. It wouldn't have necessarily required full-blown additional briefing. It could have been supplemental, of course, but— Just curious, is there a motion for attorney's fees that's been filed below? That I'm not positive of, Your Honor. Okay. Well, you're well into your rebuttals, so why don't we hear from the other side. Okay. Thank you. Thank you. Good morning, and may it please the court. Kristen Graham-Noel from Quarles & Brady, appearing on behalf of the Appellee Epic Systems Corporation. Your Honor's questions previewed many of the points I intend to make in our response, but in brief, the patents at issue present a classic case of implementing an abstract idea on a generic computer, which is not eligible under Section 101. As the patents themselves recognize, people have been communicating with their doctors, and doctors have been keeping medical records and submitting insurance claims for a long time, using traditional methods of pen and paper. I think you can glean that the panel understands that. I can. I'd like to ask you about one of the arguments pressed by your friend, which is that the district court had to take everything as true and all inferences in his favor, and therefore, why wasn't there enough to get him over the line, at least on a 12B6? Sure, Your Honor. Well, of course, the standard is a little more precise than that. The court needs to accept all well-pled facts and not conclusory legal allegations, such as the patents are patent eligible. The recitations in the brief about what was pled in the counterclaims are found at paragraphs 14 through 16 of the counterclaims. I will summarize that paragraph 14 and 15 refer to the prior art, that there were pen and paper systems and problems in the art where doctors would talk to patients using questionnaires and have summary interviews, and that there were clerical errors, and that thousands of people may have died because of these clerical errors. And then paragraph 16, and again, I'm paraphrasing, says that the inventions by using computers and a central server alleviate these errors. But that is nothing more than taking the abstract idea and using a computer, conventional computer, and making it more accurate and faster. The phrase real-time appears. What if he had just alleged that this procedure that was used on the computer was, at the time of the patent, non-routine and non-conventional? Is that sufficient? Or it's kind of hard to prove a negative, right? I mean, I don't know how he would prove that it was non-conventional. Maybe he could, but we're only at a 12 v. 6 stage. Right. He would have to point to a routine found in the claims, something in the claims being non-routine and non-conventional.  What is it in the claims that's actually claimed here? And the response was real-time communication. And this court has ruled several times, and it has been in the context of where it's been claimed,  cases such as credit acceptance versus Westlake Services. I believe Your Honor mentioned University of Florida Research Foundation versus General Electric. That wasn't real-time, but it was, I believe, much faster and automatic generation. Where the technology of using computers renders a abstract idea automatic much faster and in certain times, real-time. And in many cases, that is in the claim, either express or implicit. And in here, I don't believe the claims actually say real-time. I believe it is a natural consequence that they are really alleging. If you perform the elements of the steps of the claim, it's close to real-time. Cases like Trinity, which was just passed down by this court last year, where it's a matter of a nanosecond. And this court said that is the inherent benefit of applying an abstract idea on a computer. And just applying an abstract idea on a computer, even if you have wonderful benefits, like saving lives, as was the case of University of Florida Research Foundation versus General Electric, that doesn't elevate an abstract idea to something inventive and eligible. Even if it's done, the Trinity court found for the very first time. Anything further? Yes, if I could speak to the second appeal claim, just very brief. And I believe Judge Chen hit the nail on the head. You don't get to the Rule 15 factors, such as prejudice. And the district court, for the record, did have prejudice and did note prejudice to Epic of the long delay. But you don't get to Rule 15 if you don't get past Rule 16. And under the 11th Circuit Jurisprudence, which is what governs in this case, you must show good cause for the delay, for this nearly five-month delay past the scheduling order deadline. And in the 11th Circuit, good cause means diligence. And under the cases we cited in our brief, it is not an abuse of discretion for a district court to do that. Well, his answer to diligence, I guess, is that as soon as he got the expert report and this other litigation, he moved forward with it. So he acted diligently in the context of when he received the expert report and when it was provided or he attempted to provide it to the court. He hired the expert. It was entirely, as the district court acknowledged, it was entirely within DeCapolis' control when they decided to hire an expert because they sat on their hands. That is not diligence. That is the exact opposite. For these reasons, we respectfully submit that the district court should be affirmed. Thank you. Is there a motion for attorney's fees pending below? There is, Your Honor. Thank you. Thank you. We'll restore two minutes of rebuttal. Very briefly, I'll just address one point that my friend made about well-pled facts are required to be considered by the district court. Of course, the facts must be well-pled. There's no argument that the facts here were not well-pled. The facts here were taken directly from the intrinsic record, the specification itself, which lays out the factual basis for the follow-up argument that the approach and the solution as claimed was nonconventional at the time. So I just wanted to address that one point. Thank you. Thank you. We thank both sides. The case is submitted.